UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| GS2 Engineering & Environmental Consultants, Inc., | ) ) ) | Case No. 3:12-02934-CMC |
| Plaintiff, | ) ) | **PLAINTIFF'S MEMORANDUM IN SUPPORT** |
| vs. | ) ) | **OF MOTION FOR SUMMARY JUDGMENT** |
| Zurich American Insurance Company and Steadfast Insurance Company | ) ) ) | **FOR BREACH OF CONTRACT** |
| Defendants. | ) ) | |

### A. NATURE OF THE CASE

This lawsuit concerns claims-made-and-reported insurance coverage that GS2 Engineering & Environmental Consultants, Inc., (GS2) purchased from Zurich American Insurance Company. Steadfast is a subsidiary of Zurich. For purposes of this memorandum, GS2 refers to both Steadfast and Zurich as "Zurich." Zurich has denied GS2's claim for defense and indemnity on the basis that the claim was made against GS2 during the 2009-2010 policy but not reported until during the 2010-2011 policy. Zurich's denial is a breach of the insurance contract as a matter of law. Because GS2 purchased previous events coverage and had continuous coverage in place with Zurich for all relevant time periods, GS2 is entitled to summary judgment.

### B. PROCEDURAL POSTURE

GS2 was sued on March 10, 2010. Zurich failed to defend and indemnify GS2 in this lawsuit, claiming it had no duty under the policy.

1

GS2 brought Zurich in as a third party defendant in the state court case. It brought actions for breach of contract and bad faith failure to defend and indemnify, along with a claim for statutory attorney fees.

Zurich filed a motion to sever on July 5, 2012, which was granted on September 26, 2012. It then removed this case on October 10, 2012.

### C.  FACTS

GS2 purchased insurance policies from Zurich every year from August 2006 until August 2011, and there was no lapse in coverage. (August 2009-2011 policies are attached as Exhibit A. The 2006-2009 policies have been requested but have not yet been provided.)

Each year, GS2 also purchased retroactive coverage for incidents that occurred since August 7, 1998. An endorsement to the policy states that "[t]he 'retroactive date' is the earliest date that a 'covered operation' can commence for coverage to be provided under the policy and this endorsement." (Exhibit A, Bates p. 157-58, p. 180-81.) The insurance policy had an automatic extended reporting period of thirty days without additional charge. GS2 was also allowed under the insurance policies to purchase an additional Extended Reporting Period, which could last up to three years. This type of coverage is only available upon cancellation or non-renewal of the policy. (Exhibit A, Bates p. 144-45, p. 169-70.) Since GS2 did not cancel or have its policy terminated, this Extended Reporting Period was not available for purchase. Instead, GS2 maintained its coverage from August 2006 – August 2011.

Richland County School District 2 sued GS2 on March 10, 2010. In that lawsuit, Richland County School District 2 alleges that GS2 did not properly perform an environmental report on property purchased by the School District. Counsel for GS2 received the complaint on April 14, 2010. On September 23, 2010, Zurich was notified by mail of the claim. (See letter,

Exhibit B).  On November 12, 2010, the insured confirmed that it wanted to tender the claim. (See email from insured, Exhibit C).  Counsel for the insured confirmed again on March 7, 2011, that the insured wanted to tender the claim.  (See letter, Exhibit D).  A timeline of relevant dates follows:

- August 2006 – GS2 purchases insurance coverage from Zurich and maintains coverage through August 2011.
- March 10, 2010 – GS2 is sued by Richland School District 2
- April 14, 2010 – Attorney for GS2 accepts service
- September 23, 2010 – Claim reported to Zurich
- November 12, 2010 – GS2 tenders claim to Zurich
- February 4, 2011 – Zurich made inquiry as to whether the matter was being tendered
- March 7, 2011 – Attorney for GS2 confirms tender
- April 4, 2011 – Zurich denies coverage

On April 4, 2011, Zurich denied coverage, claiming that no duty is owed because there are two separate policies at issue:  one from August 7, 2009 until August 7, 2010 and another from August 7, 2010 until August 7, 2011.  Zurich denied coverage because the claim was made on September 23, 2010, during the second time frame. Zurich also claims that the claim consists of a pre-existing condition and is excluded from coverage.  Because Zurich denied coverage and failed to defend or indemnify GS2 as bargained for in the insurance contract, Zurich has breached the contract.

#### D. ARGUMENT

**I.     Zurich was required to defend and indemnify GS2 because the covered operation occurred during seamless coverage periods, and Zurich breached its contract with GS2 when it failed to do so.**

Pursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.,* 275 F.3d 384, 387–88 (4th Cir. 2001) (citing *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.,* 277 S.C. 88, 282 S.E.2d 856, 857 (S.C. 1981)). The complaint is construed liberally, with all doubts resolved in favor of the insured. "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 319 S.C. 12, 459 S.E.2d 318, 319 (S.C. Ct. App. 1994) (citing *Gordon–Gallup Realtors, Inc. v. Cincinnati Ins. Co.,* 274 S.C. 468, 265 S.E.2d 38, 40 (S.C. 1980)).

GS2 purchased a "claims-made-and-reported" policy, which is a variation of a "claims-made" policy. "A claims-made policy provides coverage for any claim first asserted against the insured during the policy period, regardless of when the incident giving rise to the claim occurred." *Textron, Inc. v. Liberty Mut. Ins. Co.,* 639 A.2d 1358, 1362 (R.I. 1994) (attached as Exhibit E). A claims-made-and-reported policy imposes the additional requirement that the insurer be notified within the policy period or within a certain time frame. *Id.*

There is no South Carolina case directly on point. However, in the past, this court has found "sufficient guidance in South Carolina law to resolve" a dispute that involved a claims-made policy.[1] *Med. Protective Co. of Fort Wayne, Indiana v. S. Carolina Med. Malpractice Liab. Ins. Joint Underwriting Ass'n,* 648 F. Supp. 2d 753, 761 (D.S.C. 2009) (Currie, J.). In that case, discussed below, the court interpreted a claims-based policy to find coverage for an

---

[1] The court used not only South Carolina law but also cited two 7th Circuit opinions and a Kansas Supreme Court opinion to come to its conclusion. *Id.* at 760, 763.

insured. *Id.* at 763. The court, after finding that most of the case law was not dispositive, came to its conclusion by examining the language of the policy. *Id.*

The Ohio Supreme Court examined claims-made policy language in *Helberg v. Natl. Union Fire Ins. Co.,* 657 N.E.2d 832 (Ohio 1995) (attached as Exhibit F). The description of the policy indicates it was a claims-made-and-reported policy. *Id.* at 833. In that case, an insured had two policies. The original policy was from December 11, 1990 to December 11, 1991. The insured renewed this policy so that there was no lapse in coverage. The insured became aware of a claim on October 21, 1991, but did not report the claim to the insurance company until January 21, 1992. The insurance company denied coverage because the claim was reported outside of the first policy period. *Id.*

The court focused on the fact that there had been no cancellation of coverage and that the renewal was with the same insurance carrier: "Such an event should not precipitate a trap wherein claims spanning the renewal are denied."[2] *Id.* at 834. In the policy there was particular language which led the court to the conclusion that coverage was continuous:

> Section i of the contract states that the coverage applies 'to any claim arising out of any acts or omissions occurring prior to the effective date of the first policy issued to the named insured by this Company and *continuously renewed thereafter* if any insured on such date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit.'

*Id.* (emphasis added by court).

In addition, the court considered the presence of an "Extended Reporting Endorsement" in the contract. This section states that in the case of non-renewal or cancellation, an insured

---

[2] The court examined two other cases regarding claims-made policies: *United States v. A.C. Strip,* 868 F.2d 181 (6th Cir. 1989) (attached as Exhibit G) and *Kaiser v. Wood*, 1992 WL 2538 (Ohio Ct. App. Jan. 10, 1992) (attached as Exhibit H). The court distinguished *A.C. Strip* because the insured in that case had not renewed his policy with the same carrier, and the court distinguished *Kaiser* because the policy had been cancelled. 657 N.E.2d at 834.

would need to purchase an extended endorsement for coverage. The court reasoned that the inclusion of "non-renewal" in the policy as one of the circumstances demanding the purchase of an extended reporting endorsement excludes a "renewal" as a circumstance which demands such a purchase. The court found that an insured would not need to purchase an extended reporting period if it had already purchased a renewal. Since the insured had renewed rather than have a "non-renewal" or "cancellation," the court concluded that the language of the contract did not deny coverage. *Id.* at 835.

In *AIG Domestic Claims, Inc. v. Tussey,* 2010 WL 3603844 (Ky. Ct. App. Sept. 17, 2010) (attached as Exhibit I), an insured purchased a policy which was effective from July 1, 2005, to July 1, 2006. The policy was renewed with the same carrier with an effective period from July 1, 2006, to July 1, 2007. Therefore, the insured was continuously covered from July 1, 2005 until July 1, 2007. The insured made a claim during the second policy period for a claim that occurred during the first policy period. *Id.* at *1. The court stated that "ambiguous exclusions of coverage" would be strictly construed in favor of coverage. Just as in *Helberg*, the contract had a provision for purchasing an extended reporting period in the case of contract cancellation or non-renewal. The court reasoned that renewal "implies an extended reporting period where coverage remains continuous." *Id.* at *2. The court explained that if there had been no renewal and no purchase of extended coverage, it would have found for the insurer. However, the court had "difficulty reaching the same result where, as here, the policy was renewed and there was no lapse in coverage." *Id.* at *3. Accordingly, the court found that when the insured renewed its claims-based policy at the precise time the earlier policy expired, its coverage was continuous. The court referred to the policy being in force for the entire 2 years, stating the identical terms created "seamless coverage." *Id.* at *4.

As in *Helberg*, the court also used the existence of an extended reporting option as further evidence of coverage. The court stated that because of this extended coverage provision, there was an expectation of the parties that renewal would imply continuation of coverage. Finally, the court reasoned that since there were only two circumstances in which the purchase of extended coverage would be necessary to maintain coverage, the renewal of a policy provides extended coverage and makes the purchase of an extension unnecessary. *Id* at *3. In order to purchase extended reporting, an insured would either have to terminate or have its coverage canceled. Since there is no option to purchase extended coverage in addition to renewing the policy, a renewal impliedly creates the extended reporting option. *Id.*

Just as in *AIG* and in *Helberg*, page 5 of both insurance contracts between Zurich and GS2 contains a provision to purchase an extended reporting period. The two reasons for the purchase, given in paragraph E of section IV, are "cancellation or nonrenewal." Thus, the only reason to purchase an extended reporting period is cancellation or nonrenewal. This provision implies that as long as the policy is renewed, there is "seamless," continuous coverage. As in the cases above, GS2 did not need to purchase the extended reporting period because, as a renewal, the extended reporting period was part of the renewed policy. Since GS2 notified Zurich of the claim within its coverage period, Zurich was required to cover and indemnify GS2 in this claim. Zurich failed to do so. Therefore, Zurich breached the contract.

**II.     Zurich was required to defend and indemnify GS2 because the covered operation occurred between the retroactive date and the policy's end date.**

In *Med. Protective Co. of Fort Wayne, Indiana v. S. Carolina Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, the court held that coverage was available on a claims-made policy from the retroactive date. In that case, the events triggering liability occurred from 2002 –

2004. 648 F. Supp. 2d at 754. The insured purchased a claims-made policy with a reporting period of October 2005 – 2006, but with a retroactive date of October 2003. *Id.* The insured reported the claim during the period, but the insurance company denied coverage since the event began in 2002, which was before the retroactive date. *Id.* at 759. The court held that "[t]he very language which relieves MedPro of responsibility for injuries resulting from actions and omissions predating . . . the retroactive date suggests an intent to cover claims for acts . . . which occur after that date . . . ." *Id.* at 763. The court found that omissions occurring after the retroactive date caused the injuries. *Id.* Therefore, even though the initial occurrence was prior to the inception of the insurance contract, the insurance company was required to cover and indemnify based on the bargained-for retroactive date.

Zurich and GS2 bargained for a retroactive date of August 7, 1998. The endorsements to the policy state that the policy will cover both covered operations and professional services that occur after this date and throughout the policy. Both parties to the contract specifically bargained for the fact that Zurich would provide coverage for incidents that occurred in the past, before GS2 purchased initial policy with Zurich. Thus, Zurich was paid to provide coverage for past events, as long as a claim was made during the time GS2 had a policy in place.

A claim was made by GS2 while it had a policy in place. This claim was for professional services that were performed since the retroactive date. Both parties bargained for this coverage, and Zurich was required to indemnify and defend GS2. Zurich failed to do so, and breached the contract.

## E. CONCLUSION

Based upon the foregoing reasons, Zurich was required to indemnify and defend GS2. Because Zurich failed to do so, Zurich breached its contract with GS2 and GS2 is entitled to a grant of summary judgment as a matter of law.

                                              Respectfully submitted,

                                              By:     /s/ James Edward Bradley
                                              James Edward Bradley, Fed. I.D. No. 6330
                                              1700 Sunset Boulevard
                                              P.O. Box 5709
                                              West Columbia, SC 29171
                                              (803) 796-9160
                                              Attorney for Plaintiff GS2 Engineering & Environmental Consultants, Inc.

West Columbia, SC
April 15, 2013