## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| GS2 Engineering & Environmental Consultants, Inc., | ) | C/A No. 3:12-cv-02934-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Zurich American Insurance Company and Steadfast Insurance Company, | ) | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Zurich American Insurance Company and Steadfast Insurance Company, | ) | **(Breach of Contract)** |
| | ) | |
| Counterclaim-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GS2 Engineering & Environmental Consultants, Inc., | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

TO:    JAMES EDWARD BRADLEY, ESQUIRE of Moore, Taylor & Thomas, P.A.
        *Attorneys for the Plaintiff and Counterclaim-Defendant,*
            *GS2 Consultants & Environmental Consultants, Inc.*

The Defendants and Counterclaim-Plaintiffs, Zurich American Insurance Company ("Zurich") and Steadfast Insurance Company ("Steadfast"), respectfully jointly submit this Memorandum of Law in opposition to the Motion for Summary Judgment (Breach of Contract claim) submitted by the Plaintiff and Counterclaim-Defendant, GS2 Engineering & Environmental Consultants, Inc. ("GS2 Engineering"). in the above-captioned matter.

Based upon the pleadings filed herein, the documentary and/or testimonial evidence submitted herewith, and the applicable statutory and case-made law, Zurich and Steadfast respectfully assert they are entitled to summary judgment**1** as a matter of law on GS2 Engineering's breach of contract claim.**2**

# ARGUMENT AND CITATION OF AUTHORITY

## *The Steadfast Insurance Policy*

The Steadfast Policy**3** provided, in pertinent part, as follows:

> This is a **claims made and reported policy**. Notice of a potential "claim" is not a "claim" and does not trigger coverage under this policy. This policy has certain provisions and requirements unique to it and may be different from other policies an "insured" may have purchased. Read the entire policy carefully to determine rights, duties[,] and what is and is not covered. . . . . Words and phrases that appear in quotations have special meaning. Refer to DEFINITIONS (Section VIII).

---

**1** Zurich and Steadfast, pursuant to their recently filed Motion for Summary Judgment [ECF 31], respectfully re-assert they are entitled to summary judgment as a matter of law as to all claims and/or causes of action asserted by and/or against GS2 Engineering. Zurich and Steadfast join in and adopt the arguments set forth in their Memorandum of Law in Support of Motion for Summary Judgment filed 1 May 2013. [ECF 31-1].

**2** Pursuant to DSC LCR 7.05(A)(5), it does not appear that the parties hereto disagree about the relevant facts and timing of the events relevant to this case. Zurich and Steadfast adopt the Statement of Facts [ECF 31-1, pp. 4-10 of 27] contained in their Memorandum of Law in Support of Motion for Summary Judgment. [ECF 31].

**3** On 7 August 2010, Steadfast issued a *Professional Environmental Consultant's Liability Insurance Policy* to GS2 Engineering covering a policy period from 7 August 2010, until 7 August 2011. [ECF 18-1, p.4 0f 24; Forte Aff., paras. 15, 18]. *See* Professional Environmental Consultant's Liability Insurance Policy No. PEC 9211035-04 issued 7 August 2010 (the "Steadfast Policy"). [ECF 18-1; Forte Aff., paras. 13, 15, 26-28]. A copy of the Steadfast Policy is attached hereto as **Exhibit "A"** and incorporated herein by reference. GS2 Engineering has previously admitted this fact. [ECF 28, p.5 of 10, para. 2]. *See also* Affidavit of Ann Marie Forte sworn to on 25 April 2013 (the "Forte Aff."). A copy of the Forte Aff. is attached hereto as **Exhibit "B"** and incorporated herein by reference.

> **"Claims" must first be made against the "insured" during the "policy period" and "claims" must be reported, in writing, to us during the "policy period", the automatic extended reporting period[,] or the extended reporting period, if applicable**.

[ECF 18-1, p.4 of 24; *Forte Aff.*, para. 26] (Emphasis added).

The Steadfast Policy also provided, in pertinent part, in the section captioned **I. INSURING AGREEMENT**, via the subsection entitled **COVERAGE A: PROFESSIONAL LIABILITY**, as follows:

> We will pay on behalf of an "insured" any "damages" an "insured" is legally obligated to pay as a result of a "claim" caused by:
>
> **1.**    An act, error or omission; or
>
> **2.**    Strict liability imposed by environmental law because of an act, error[,] or omission;
>
> During the rendering of or failure to render "professional services" provided that such act, error[,] or omission must commence on or after the "retroactive date" and before the end of the "policy period" and the "claim" is first made against the "insured" during the "policy period" and reported to us during the "policy period," the automatic extended reporting period[,] or the extended reporting period, if applicable.

[ECF 18-1, p.4 of 24; *Forte Aff.*, para. 27].**4**

---

**4**    The Steadfast Policy further provided, in pertinent part, in the same section, through **COVERAGE B: CONTRACTOR'S POLLUTION LIABILITY**, as follows

> We will pay on behalf of an "insured" any "loss" an "insured" is legally obligated to pay as a result of a "claim" caused by a "pollution event" resulting from "covered operations" or "completed operations" of the "covered operations" and provided that the "covered operations" must commence on or after the "retroactive date" and before the end of the "policy period" and the "claim" is first made against the "insured" during the "policy period" and reported to us during the "policy period", the automatic extended reporting period[,] or the extended reporting period, if applicable.

[ECF 18-1, p.4 of 24].

The Steadfast Policy further provided, in pertinent part, in the section titled **IV.**

**EXTENDED REPORTING PERIOD**, as follows:

> **A.**  You shall be entitled to an automatic extended reporting period without additional charge upon termination of coverage as defined in this section.  This period starts at the end of the "policy period" and lasts for thirty (30) days.

> **B.**  In addition to the automatic extending reporting period you shall be entitled to purchase an extended reporting period of up to three (3) years in duration upon termination of coverage as defined in this section.  The charge for an extended reporting period of up to three (3) years in duration shall not be more than one hundred percent (100%) of the premium per "policy period".  The extended reporting period of up to three (3) years in duration starts when the automatic extended reporting period set forth in the above paragraph ends.

[ECF 18-1, p.18 of 24].**5**  Finally, the Steadfast Policy provided, in pertinent part, in **VIII.**

**DEFINITIONS**, as follows:

> **C.**  "Claim" or "claims" mean any demand or notice received by an "insured" alleging liability or responsibility on the part of an "insured" for:

>> **1.**  Under **Coverage A**, "damages arising from an act, error or omission in the performance of or the failure to perform "professional services";

* * *

---

**5**      The up to three-year extended reporting period (the "ERP") was, as noted, was purchasable "upon termination of coverage" [ECF 18-1, p.8] which the Steadfast Policy specifically defined as "any cancellation or nonrenewal of th[e] policy except for fraud or material misrepresentation, a material change in the nature or extent of the risk[,] or nonpayment of premium."  [ECF 18-1, p.9, Section **IV. E.**).  In this case, GS2 Engineering first purchased coverage on 7 August 2005, and continuously maintained coverage until 7 August 2011.  [ECF 28, p.3 of 10, para. 3; ECF 28, p.8 of 10, para. 2; <u>Forte Aff.</u>, paras. 8, 13].  The automatic 30-day ERP "kicked-in" on 7 August 2011, and extended a claim "reporting period" **for the 2010-2011 policy period** from 7 August 2011, until no later than 6 September 2011.

**F.** "Completed operations" coverage begins when the job is completed and includes all "bodily injury" and property damage" occurring away from premises you own or rent and arising out of 'covered operations" . . .

\* \* \*

**G.** "Covered operation" or "covered operations" means those activities or operations conducted by or on behalf of you and specifically described in the Covered Operations endorsement attached to this policy.**6**

\* \* \*

**V.** "Retroactive date" means the date set forth in the Declarations or attached endorsement, and the earliest date a "professional service" or "covered operation" can commence for coverage to be provided under this policy.**7**

[ECF 18-1, pp.14-16 of 24].

## A.  The Steadfast Policy Did Not Cover Richland Two's Claim Against GS2 Engineering Since Both The Claim And GS2 Engineering's Report Of The Claim Did Not Occur Within The Same Policy Period.

### *The Richland Two Claim*

Richland Two sued GS2 Engineering on 22 March 2010.  [ECF 28, p.2 of 10, para. 2; ECF 28, p.3 of 10, para. 5].  GS2 Engineering's attorney accepted service of the pleadings on 14 April 2010.  [ECF28, p.3 of 10, para. 5; ECF 28, p.4 of 10, para. 1; *Forte Aff.*, paras. 19-20; *4/4/2011 Forte Ltr.*, p.1, para. 3].**8**  On 23 September 2010,

---

**6**    Form STF-ENVL-1566-A CW (08/08) entitled **Covered Operations and Retroactive Dates** defines the term "covered operations" as CONTRACTING OPERATIONS PERFORMED BY THE NAMED INSURED THAT ARE INCIDENTAL TO THE NAMED INSURED'S "COVERED PROFESSIONAL SERVICES".  [ECF 18-1, p.21 of 24].

**7**    The retroactive date was designated as 7 August 1998. [ECF 18-1, pp.21-22 of 24].  GS2 Engineering has previously admitted this fact.  [ECF 28, p.9 of 10, para. 2].

**8**    *See* Letter from Ann Marie Forte to James E. Bradley, Esquire dated 4 April 2011 (the "4/4/2011 Forte Ltr.").  A copy of the 4/4/2011 Forte Ltr. is attached hereto as **Exhibit "C"** and incorporated herein by reference.  GS2 Engineering agrees.  [ECF 28, p.3 of 10, para. 5].

Richland Two's attorney sent Steadfast a "courtesy copy" of the Summons and Complaint in the State Court Underlying Action. (*Forte Aff.*, para. 21; *4/4/2011 Forte Ltr.*, p.1, para. 4; *10/6/2010 Smith Ltr.*, p.1).**9**  On 21 January 2011, GS2 Engineering's attorney confirmed to Steadfast that, on 14 April 2010, he had accepted service of the Summons and Complaint on GS2 Engineering's behalf. (*Forte Aff.*, para. 23; *4/4/ 2011 Forte Ltr.*, p.1, para. 4; *1/21/2011 Bradley E-Mail*, p.1).**10**  Thereafter, on 4 February 2011, Steadfast requested GS2 Engineering's lawyer to advise Steadfast whether GS2 Engineering was officially tendering the Richland Two claim to Steadfast. (*Forte Aff.*, para. 24; *2/4/2011 Forte E-Mail*, p.1, para. 1).**11**  On 7 March 2011, GS2 Engineering's attorney formally tendered the Richland Two matter to Steadfast. (*Forte Aff.*, para. 25; *3/7/2011 Letter*, p.1).**12**

---

**9**      *See* Letter from Allen D. Smith, Esquire to Zurich North America dated 6 October 2010 (the "10/6/2010 Smith Ltr."). A copy of the 10/6/2010 Smith Ltr. is attached hereto as **Exhibit "D"** and incorporated herein by reference. GS2 Engineering has admitted this. [ECF 28, p.3 of 10, para. 5].

**10**      *See* E-Mail from James E. Bradley, Esquire to Anne Marie Forte dated 21 January 2011 (the "1/21/2011 Bradley E-Mail"). A copy of the 1/21/2011 Bradley E-Mail is attached hereto as **Exhibit "E"** and incorporated herein by reference. GS2 Engineering has previously admitted this fact. [ECF 28, p.3 of 10, para. 5].

**11**      *See* E-Mail from Anne Marie Forte to James E. Bradley, Esquire dated 4 February 2011 (the "2/4/2011 Forte E-Mail"). A copy of the 2/4/2011 Forte E-Mail is attached hereto as **Exhibit "F"** and incorporated herein by reference.

**12**      *See* Letter from James Edward Bradley, Esquire to Anne Marie Forte dated 7 March 2011 (the "3/7/2011 Bradley Letter"). A copy of the 3/7/2011 Bradley Letter is attached hereto as **Exhibit "G"** and incorporated herein by reference. GS2 Engineering has previously admitted this fact. [ECF 28, p.4 of 10, para. 1]. By e-mail dated 12 November 2010, George A. Sembos, P.E., GS2 Engineering's President had tendered the Richland Two claim to Steadfast. [ECF 28, p.4 of 10, para. 1; 11/12/2010 Sembos E-Mail", p.1]. A copy of the 11/12/2010 Sembos E-Mail is attached hereto as **Exhibit "H"** and incorporated herein by reference. While Mr. Sembos did not recall when he received notice of the State Court Underlying Action, he admitted he "fe[lt] pretty certain that it was after [Steadfast's] policy deadline." (11/12/2010 Sembos E-Mail, p.1).

On 4 April 2011, Steadfast denied coverage to GS2 Engineering for the Richland Two claim (*Forte Aff.*, para. 29; *4/4/2011 Forte Ltr.*, pp.1-5) based upon the fact the Richland Two claim did not come within the terms and conditions of the **INSURING AGREEMENT** as neither the claim nor the reporting thereof occurred within the policy period of the Steadfast Policy – 7 August 2010, until 7 August 2011.  [ECF 28, p.4 of 10, para. 2; *Forte Aff.*, para. 29; *4/4/2011 Forte Ltr.*, p.4.  GS2 Engineering knew about the Richland Two claim no later than 14 April 2010, when its attorney accepted service of the pleadings.  (*Forte Aff.*, para. 30; *4/4/2011 Forte Ltr.*, p.4).[13]

## 1.    The Steadfast Policy Required The Richland Two Claim And GS2 Engineering's Mandatory Reporting Of The Claim To Both Occur During The Same Policy Period

As GS2 Engineering has admitted, the Steadfast Policy is a "claims made and reported" policy "which is a variation of a 'claims made' policy".  [ECF 28, p.5 of 10, para. 2].  While this District Court has had the opportunity to address some "claims-made" policies,[14] it has not, before this present case, apparently had the chance to

---

[13]    Steadfast also denied coverage because the Steadfast Policy excluded coverage for pre-existing conditions GS2 Engineering knew about before the policy's inception.  (Forte Aff., para. 31; 4/4/2011 Forte Ltr., p.4).  GS2 Engineering knew about the Richland Two claim as of 14 April 2010, when its lawyer accepted service of the pleading - well before 7 August 2010.  (Forte Aff., paras. 30-31; 4/4/2011 Forte Ltr., p.4).  GS2 Engineering later resubmitted the Richland Two claim to Zurich on or about 27 January 2012.  (Forte Aff., para. 34; 2/2/2012 Forte Ltr., p.1, para. 2).  *See* Letter from Anne Marie Forte to James Edward Bradley, Esquire dated 2 February 2012 (the "2/2/2012 Forte Ltr.").  A copy of the 2/2/2012 Forte Ltr. is attached hereto as **Exhibit "I"** and incorporated herein by reference.  This occurred as the State Court Underlying Action was proceeding to be restored to the active trial docket.  *See* Rule 40(j), SCRCivP.  (Forte Aff., para. 33).  Steadfast again denied the claim on the same grounds as previously indicated. (Forte Aff., paras. 36-37; 2/2/2012 Forte Ltr., pp.1-2).

[14]    *See generally* Med. Protective Co. of Ft. Wayne, Indiana v. S.C. Med. Mal. Liab. Ins. JUA, 648 F.Supp.2d 753 (D.S.C. 2009); Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959 (D.S.C. 1997).

address and interpret a "claims made and reported" policy. Consequently, it is appropriate to look to the significant case law available from other jurisdictions interpreting "claims made and reported" policies.**15**

GS2 Engineering argues that _Helberg v. Nat'l Union Fire Ins. Co._,**16** and _AIG Domestic Claims, Inc. v. Tussey_,**17** support its position that the mere existence of "a provision to purchase an extended reporting period" somehow "implie[d] that as long as

---

**15**    GS2 Engineering intimates that this District Court possibly would have "sufficient guidance in [present] South Carolina law to resolve" this dispute.  [ECF 28, p.5 of 10, para. 3] (_citing_ Med. Protective Co. of Ft. Wayne, Indiana v. S.C. Med. Mal. Liab. Ins. JUA, 648 F.Supp.2d 753, 761).  Unlike Med. Protective Co. of Ft. Wayne, Indiana v. S.C. Med. Mal. Liab. Ins. JUA (involving both "occurrence" and "claims-made" policies), there does not appear to be any relevant legal authority in either South Carolina's State and/or Federal Courts regarding the interpretation of "claims made and reported" policies.  Consequently, GS2 Engineering's continual reference to "claims made" policy interpretations such as Med. Protective Co. of Ft. Wayne, Indiana v. S.C. Med. Mal. Liab. Ins. JUA, 648 F.Supp.2d 753, and Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, are unpersuasive given the significant and critical differences between a "claims made and reported" policy and a "claims made" policy. Nevertheless, just based upon the clear and unambiguous language in the Steadfast Policy requiring the claim and its reporting to both occur in the same policy period, this District Court could use well-settled South Carolina legal principles to easily resolve this case in Steadfast's and Zurich's favor.  _See generally_ M and M Corp. of S.C. v. Auto-Owners Ins. Co., 390 S.C. 255, 259, 701 S.E.2d 33, 34 (2010); Blakeley v. Rabon, 266 S.C. 68, 72, 221 S.E.2d 767, 769 (1976); State Auto Prop. & Cas. Co. v. Brannon, 310 S.C. 388, 426 S.E.2d 810 (Ct.App. 1992); S.C. Farm Bureau Mut. Ins. Co. v. Kennedy, 390 S.C. 125, 131, 700, S.E.2d 258, 261 (Ct.App. 2010); Hansen _ex. rel._ Hansen v. USAA, 350 S.C. 62, 68, 565 S.E.2d 114, 116 (Ct.App. 2002) (_quoting_ Bruce v. Blalock, 241 S.C. 155, 161, 127 S.E.2d 439, 442 (1962)); Auto-Owners Ins. Co. v. Langford, 330 S.C. 578, 582, 500 S.E.2d 496, 499 (Ct.App. 1998); Falkosky v. Allstate Ins. Co., 311 S.C. 369, 429 S.E.2d 194 (Ct.App. 1993), _certiorari granted in part and opinion affirmed as modified on other grounds_, 312 S.C. 210, 439 S.E.2d 839 (1994); Tobin v. Beneficial Standard Life Ins. Co., 672 F.2d 606, 607 (4th Cir. 1982); Diamond State Ins. Co. v. Homestead Indus., Inc., 318 S.C. 231, 456 S.E.2d 912 (1995); Cook v. State Farm Auto. Ins. Co., 376 S.C. 426, 430, 656 S.E.2d 784, 786-787 (Ct.App. 2008); B.L.G. Enterprises, Inc. v. First Financial Ins. Co., 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999).

**16**    Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 657 N.E.2d 832 (Ohio App. 6th Dist. 1995) (_per curiam_).

**17**    AIG Domestic Claims, Inc. v. Tussey, 2010 WL 3603844 (Ky.App., filed 17 September 2010), _rehearing denied_ (24 November 2010), _review granted_ (14 September 2011).

the [Steadfast] [P]olicy [wa]s renewed, there [wa]s 'seamless', continuous coverage"
and "because, as a renewal, the extended reporting period was [automatically] a part of
the renewed [Steadfast] [P]olicy."  [ECF 28, p.8 of 10, para. 2].  Unfortunately for GS2
Engineering neither _Helberg_ nor _Tussey_ are availing in any manner.[18]

In _Helberg v. Nat'l Union Fire Ins. Co._, the Sixth District Court of Appeals of Ohio,
Lucas County, while indicating that it was simply interpreting a "claims made" policy,
appears to have actually been interpreting language very close to a "claims made and
reported" policy.[19]   Like the situation in this case, the _Helberg_ insured failed to
timely/properly notify its insurance company of a claim against it which had occurred

---

[18]      _See_ Checkrite Limited, Inc. v. Ill. Nat'l Ins. Co., 95 F.Supp.2d 180 (S.D.N.Y. 2000).  In that case, the District Court noted:

> It must be remembered that the reporting period defines coverage under a claims-made policy.  To read an 'inherent' extended reporting period into a renewal policy would 'creat[ ] a long [and unbargained-for] 'tail' of liability exposure, the avoidance of which forms the conceptual framework for claims made coverage in the first instance.'  This conceptual framework applies where a policy is renewed, as well as when it is not, since each policy year represents an agreement as to a specific period during which claims made and reported will be covered.

Checkrite Limited, Inc. v. Ill. Nat'l Ins. Co., 95 F.Supp.2d 180, 194 (_quoting_ Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Bauman, 1992 WL 1738, *10 (N.D.Ill., filed 2 January 1992) (Alterations in original).  The District Court recognized "that most courts that have confronted [this issue] have concluded that a renewal **_does not extend_** the reporting period for claims made during the earlier policy period."  Checkrite Limited, Inc. v. Ill. Nat'l Ins. Co., 95 F.Supp.2d 180, 194 (_citing_ Nat'l Union Fire Ins. Co. v. Talcott, 931 F.2d 166, 166–168 (1st Cir. 1991); Ehrgood v. Coregis Ins. Co., 59 F.Supp.2d 438, 446–447 (M.D.Pa. 1998); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Bauman, 1992 WL 1738, **10–11 (N.D.Ill., filed 2 January 1992); Insite–Properties, Inc. v. Jay Phillips, Inc., 271 N.J.Super. 380, 638 A.2d 909, 912–13 (App.Div.1994); Helfand v. Nat'l Union Fire Ins. Co., 10 Cal.App.4th 869, 885–887, 13 Cal.Rptr.2d 295 (1992)) (Emphasis added).

[19]      Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 680-681, 657 N.E.2d 832, 833.

during one policy period (the 1990-1991 policy period) until after the next policy period (the 1991-1992 policy period) had already commenced.[20]  In addition, also like this case, the _Helberg_ insured continuously renewed its coverage and a policy was in effect during both policy periods with no lapse in coverage.[21]

Unlike this case, however the insurance policy interpreted in _Helberg_ contained specific language evidencing the parties' apparent coverage intent which, importantly, stated:

> the coverage applies 'to any claim arising out of any acts or omissions occurring prior to the effective date of the first policy issued to the named insured by this Company and **_continuously renewed thereafter_** if any insured on such date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit.'[22]

The Ohio Appellate Court concluded that "[t]his language indicates that the **_parties expected_** the coverage to be continuous if the policy was renewed at each successive policy expiration."[23]

---

[20]    Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 681, 657 N.E.2d 832, 833.

[21]    Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 681, 657 N.E.2d 832, 833.

[22]    Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 682, 657 N.E.2d 832, 834 (Emphasis in original).

[23]    Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 682, 657 N.E.2d 832, 834 (Emphasis added).  "The doctrine of reasonable expectations, which is essentially that the objectively reasonable expectations of insureds as to coverage will be honored even though a careful review of the terms of the policy would have shown otherwise, **_has been rejected_** in South Carolina." _Ex parte_ United Services Auto. Ass'n., 365 S.C. 50, 54, 614 S.E.2d 652, 654 (Ct.App. 2005) (_citing_ Allstate Ins. Co. v. Mangum, 299 S.C. 226, 231-232, 383 S.E.2d 464, 466-467 (Ct.App. 1989)).

Conversely, unlike the *Helberg* policy, the Steadfast Policy did not contain any "*continuously renewed thereafter*" language which, in turn, seems to reasonably demonstrate that the *Helberg* policy could not have been a true "claims made and reported" policy. All true "claims made and reported" polices, like the Steadfast Policy, take each policy period as a separate and distinct time period, notwithstanding any continuously renewed coverage, and looks to the finite time period between the date the policy period commenced and the date the policy period ended.[24]

Even if this District Court found *Helberg* helpful, the decision has been rejected in a number of situations like that presented in the present case. For example, in *Goings & Goings, Inc. v. U.S. Risk, Inc.*,[25] the Fourth District California Court of Appeal, Division 3, addressed a malpractice claim concerning a convalescent home insured through two successive "claims made and reported" policies.[26] The California court noted that the insured had received notice of a claim during the term of the first policy and did not report the claim to the insurer until the subsequent policy term had started.[27] Not only did the Court of Appeals conclude the policies were specific as to when a claim

[24]    This, of course, also includes, if applicable, any limited 30-day post-non-renewal or post-cancellation automatic ERP. Furthermore, the only time the actual 365-day policy period is not the critical time frame is when, as here, the policy affords the insured the opportunity to purchase an extended (*i.e.*; optional) ERP once the policy has been cancelled and/or non-renewed. That scenario does not apply in this case as GS2 Engineering continuously maintained coverage from 7 August 2005, until 7 August 2011, and did not purchase any optional ERP coverage when the Steadfast Policy ended. [ECF 28, p.8 of 10, para. 2; Forte Aff., paras. 8, 13, 15-18].

[25]    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863 (Cal.App. 4th Dist. 2005).

[26]    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863, *2.

[27]    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863, **1-2, 4.

had to have been made and reported, but also determined that the fact the insured had maintained continuous coverage was immaterial.**28**    The California appellate court recognized:

> [T]he fact of continuous coverage [cannot] excuse an unambiguous requirement to report claims within one-year policy periods.    The policies themselves are clear enough: Coverage is written on a policy period (year-by-year) basis, and the ***claim and the report must be made within the same policy period***.**29**

The California court concluded that "Yes, th[e] [policy language] means ***a claim in Policy 1 and a report in Policy 2 can indeed equal no coverage***, a fact that has been specifically noted in the *Croskey Insurance Treatise*."**30**    Furthermore, the appellate court noted:

> The approach taken by an Ohio appellate court in . . *Helberg* . . of finding ambiguity in the policy, won't work here.  The policy in *Helberg* had an exclusion for claims arising prior to the effective date of the 'first policy issued' and 'continuously renewed thereafter', which the court construed to mean to the 'the parties expected coverage to be continuous if the policy was renewed at each successive policy expiration.'  No such language is in the policy here [nor is it in the Steadfast Policy].**31**

---

**28**    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863, **4-5.

**29**    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863, *5.

**30**    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863, *5 (*citing* Croskey, *et al.*, Cal. Practice Guide: Insurance Litigation, ¶¶ 7:2417-7:2417.1 (The Rutter Group 2005) ("A coverage gap may occur where the insured obtains successive 'claims made and reported' policies.  If a claim is made against the insured during policy year one but not reported to the insurer until policy year two, there may be no coverage under either policy, even if issued by the same insurer!"); Helfand v. Nat'l Union Fire Ins. Co. , 10 Cal.App.4th 869, 885–887, 13 Cal.Rptr.2d 295) (Emphasis added).

**31**    Goings & Goings, Inc. v. U.S. Risk, Inc., 2005 WL 3320863, *5 (*citing* Helberg v. Nat'l Union Fire Ins. Co., 102 Ohio App.3d 679, 682, 657 N.E.2d 832, 834).  *See also* Pantropic Power Products, Inc. v. Fireman's Fund Ins. Co., 141 F.Supp.2d 1366, 1369-1371

Likewise, *AIG Domestic Claims, Inc. v. Tussey*,[32] does not assist GS2 Engineering.  In *Tussey*, unlike this case, the Kentucky Court of Appeals interpreted a "claims made" policy, not a "claims made and reported" policy.[33]  Nevertheless, much like the *Helberg* situation, the "seamlessly covered" insured became aware of a claim in one policy period and did not report it to the insurance company until the   next   policy period.[34]  The Kentucky appellate court majority, agreeing with *Helberg*,[35] concluded, in a split decision, that "we are of the opinion that the renewal of the policy provided continual and seamless coverage to the [insured and, therefore, the claim was covered]."[36]

On the other hand, the dissenter- Judge Thomas B, Wine - noted:

> [I]t is important to remember that the reporting period is what defines coverage under 'claims-made' policies of insurance.  It is this very requirement which distinguishes claims-made policies from occurrence-based policies.  Indeed, '[t]o read an 'inherent' extended reporting period into a renewal policy [for claims-based policies] would 'creat[e] a long [and unbargained-for] tail of liability exposure, the avoidance of which forms the conceptual framework' " for claims-based coverage in the first place.[37]

---

(S.D.Fla. 2001) (noting different language in <u>Helberg</u> policies); <u>Checkrite Limited, Inc. v. Ill. Nat'l Ins. Co.</u>, 95 F.Supp.2d 180, 194 (S.D.N.Y. 2000) (same).

**32**     <u>AIG Domestic Claims, Inc. v. Tussey</u>, 2010 WL 3603844.

**33**     <u>AIG Domestic Claims, Inc. v. Tussey</u>, 2010 WL 3603844, *2.

**34**     <u>AIG Domestic Claims, Inc. v. Tussey</u>, 2010 WL 3603844, *1.

**35**     The dissent noted that, as of the time <u>Tussey</u> was released, "the only three courts which have cited <u>Helberg</u> saw fit to distinguish it."  <u>AIG Domestic Claims, Inc. v. Tussey</u>, 2010 WL 3603844, *5 n.3 (Wine, J., dissenting).

**36**     <u>AIG Domestic Claims, Inc. v. Tussey</u>, 2010 WL 3603844, **3-4.

**37**     <u>AIG Domestic Claims, Inc. v. Tussey</u>, 2010 WL 3603844, *5 (*quoting* <u>CheckRite Limited v. Ill. Nat'l Ins. Co.</u>, 95 F.Supp.2d 180, 194) (*quoting* <u>Nat'l Union Fire Ins. Co. v. Bauman</u>, 1992 WL 1738, *10).

Furthermore, Judge Wine continued on noting that "[b]y ignoring this fact, this Court [of Appeals] is _**giving the insured that for which they did not bargain**_, and is breaking rank with the overwhelming majority of jurisdictions all over this country who have repeatedly held that failure to notify an [insurance company] within the [applicable] policy period in a claims-based policy [completely] defeats coverage under the policy",**38** and this Court of Appeals' decision is "directly contrary to the position taken by our own [Federal] [C]ircuit [Court of Appeals] and our own [Federal] [D]istrict [C]ourts."**39**

Contrary to GS2 Engineering's position, neither _Helberg_'s nor _Tussey_'s rationale is convincing as both of those decisions espouse the small minority position which, as a practical matter, completely defeats the parties' intent underpinning a "claims made and reported" policy.  As noted by the United States Court of Appeals for the Fifth Circuit, in _First American Title Ins. Co. v. Continental Cas. Co._,**40** "a claims-made-and-reported policy establishes certain conditions precedent to coverage."**41**  The Court of Appeal recognized that "[c]laim-triggering reporting is one of these conditions [and] [b]y serving

---

**38**     AIG Domestic Claims, Inc. v. Tussey, 2010 WL 3603844, *5 (_citing_ CheckRite Limited v. Ill. Nat'l Ins. Co., 95 F.Supp.2d 180; Nat'l Union Fire Ins. Co. v. Bauman, 1992 WL 1738; Ehrgood v. Coregis Ins. Co., 59 F.Supp.2d 438; Pantropic Power Prods. v. Fireman's Fund Ins. Co., 141 F.Supp.2d 1366; Gulf Ins. Co. v. Dolan Fertig & Curtis, 433 So.2d 512 (Fla. 1983); U.S. v. A.C. Strip, 868 F.2d 181 (6thCir. 1989)) (Wine, J., dissenting) (Emphasis added).  Judge Wine retired in 2012.  _See_ http://judgepedia.org/index.php/Thomas_Wine.

**39**     AIG Domestic Claims, Inc. v. Tussey, 2010 WL 3603844, *5 (_citing_ U.S. v. A.C. Strip, 868 F.2d 181; Trek Bicycle Corp. v. Mitsui Sumitomo Ins. Co., Ltd., 2006 WL 1642298 (W.D.Ky. 2006)) (Wine, J., dissenting).

**40**     First American Title Ins. Co. v. Continental Cas. Co., ___ F.3d ___ (5th Cir. 2013) (2013 WL 7576555, filed 28 February 2013).

**41**     First American Title Ins. Co. v. Continental Cas. Co., ___ F.3d ___, ___ (2013 WL 7576555, *4) (_citing_ Resolution Trust Corp. v. Ayo, 31 F.3d 285, 288 (5th Cir. 1994)) ("Under claims made policies, the mere fact that an 'act, error, or omission' occurs during the policy period is not sufficient to trigger insurance coverage.")).

as a required element for establishing a claim under a claims-made-and-reported policy's insuring clause, claim-triggering reporting 'allow[s] the insurer to 'close its books' on a policy at its expiration and therefore 'attain a level of predictability unattainable under standard occurrence policies.' ' "**42**

Similarly, the Unites States District Court for the Southern District of Mississippi, in *Sollek v. Westport Ins. Corp.*,**43** noted a " 'claims made' policy. . . protects the insured against claims made during the term of the policy . . . .' "**44** The District Court

---

**42**    First American Title Ins. Co. v. Continental Cas. Co., ___ F.3d ___, ___ (2013 WL 7576555, *4) (*citing* Resolution Trust Corp. v. Ayo, 31 F.3d 285, 289 (*quoting* FDIC v. Mijalis, 15 F.3d 1314, 1330 (5th Cir.1994)) (Last alteration in original).  In a "claims made and reported" policy, an insurance company "[i]n exchange for the assurance that it will be liable for only those claims that are made and reported to it during the policy's effective term, . . .may make certain concessions, such as accepting a lower policy premium."  *See* First American Title Ins. Co. v. Continental Cas. Co., ___ F.3d ___, ___ (2013 WL 7576555, *4).  *See also* Simpson & Creasy, P.C. v. Continental Cas. Co., 770 F.Supp.2d 1351, 1355 (S.D.Ga. 2011) (*citing* Gerald P. Dwyer, Jr., Appleman on Insurance Law and Practice, § 4.04[4][d][1] (Thomson Reuters West 2010)).  *See also* Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1366 n.7 (R.I. 1994) (*citing* Burns v. Int'l Ins. Co., 929 F.2d 1422, 1425 (9th Cir. 1991) ("[a] claims-made policy reduces the potential exposure of the insurer and is therefore less expensive to the insured") (Alteration in original); City of Harrisburg v. Int'l Surplus Lines Ins. Co., 596 F.Supp. 954, 961 (M.D.Pa. 1984), *affirmed*, 770 F.2d 1067 (3d Cir. 1985) (because an insurer's liability under a claims-made policy "does not extend beyond the end of a specific term . . . an insured pays a lesser premium"); Gulf Ins. Co. v. Dolan Fertig & Curtis, 433 So.2d 512, 516 (lower premiums are charged because "there is no open-ended 'tail' after the expiration date of the policy"); Esmailzadeh v. Johnson & Speakman, 869 F.2d 422, 425 (8th Cir. 1989)).

**43**    Sollek v. Westport Ins. Corp., ___ F.Supp.2d ___ (S.D.Miss. 2012) (2012 WL 5835535, filed 2 November 2012).

**44**    Sollek v. Westport Ins. Corp., ___ F.Supp.2d ___, ___ (2012 WL 5835535, *3) (*quoting* Titan Indem. Co. v. Williams, 743 So.2d 1020, 1024 (Miss.App. 1999) (Internal citation omitted in original)).  *See also* Moody v. Amer. Guarantee & Liab. Ins. Co., 804 F.Supp.2d 1123 (W.D.Wash. 2011) (*citing* Safeco Title Ins. Co. v. Gannon, 54 Wash.App. 330, 338, 774 P.2d 30, *review denied*, 113 Wash.2d 1026, 782 P.2d 1069 (1989)).  *See also* Financial Resources Ntwk., Inc. v. Brown & Brown, Inc., 867 F.Suppp.2d 153, 178 (D.Mass. 2012) (*citing* New England Envt'l Technologies v. American Safety Risk Retention Grp., 738 F.Supp.2d 249, 255 (D.Mass. 2010)).  *See also* Jennings Constr. Svs. Corp. v. ACE Amer. Ins. Co., 783 F.Supp.2d 1209 (M.D.Fla. 2011) (*quoting* Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So.2d 512, 514).

further recognized that "[a]lthough similar in many respects to a claims-made policy, a claims-made and reported policy differs in that it 'also requires that the claim be reported to the insurance company within the policy period.' "**45**  Importantly, the District Court acknowledged "it is generally held that [claims-made and reported] policies ***require both the making and reporting of the claim within the specified period*** [since it is clear that] "[b]oth reports are 'considered **_essential_** to coverage' . . .' "**46** Furthermore, " '[s]uch a [notice requirement] provision ***defines the scope of coverage*** by providing a certain date after which an insurer knows it is no longer liable under the policy.' "**47**

---

**45**    Sollek v. Westport Ins. Corp., ___ F.Supp.2d ___, ___ (2012 WL 5835535, *3) (*quoting* Jones v. Lexington Manor Nursing Ctr., L.L.C., 480 F.Supp.2d 865, 868 (S.D.Miss. 2006) (Internal citations and quotations omitted in original)). *See also* Jennings Constr. Services Corp. v. ACE American Ins. Co., 2012 WL 851180, *2 (M.D.Fla. , filed 11 January 2012) (Not reported in F.Supp.2d); Jones v. Lexington Manor Nursing Ctr., 480 F.Supp.2d 865, 868–869 (collecting cases); 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance, Third Edition, § 102:20 n. 65 (Thomson Reuters West 2011).

**46**    Sollek v. Westport Ins. Corp., ___ F.Supp.2d ___, ___ (2012 WL 5835535, *3) (*quoting* East Texas Med. Ctr. Reg'l Healthcare Sys. V. Lexington Ins. Co., 575 F.3d 520, 528 (5th Cir. 2009) (Internal citation omitted in original, emphasis added)).

**47**    Sollek v. Westport Ins. Corp., ___ F.Supp.2d ___, ___ (2012 WL 5835535, *8) (*quoting* East Texas Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co., 575 F.3d 520, 528 (Internal citation and punctuation omitted in original, alteration and emphasis added)). *See also* Jones v. Lexington Manor Nursing Ctr., 480 F.Supp.2d 865, 868 (*citing* Chicago Ins. Co. v. Western World Ins. Co., 1998 WL 51363, *3 (N.D.Tex. 1998); Pension Trust Fund for Operating Engineers v. Federal Ins. Co., 307 F.3d 944, 956 (9th Cir. 2002); Doctors' Co. v. Ins. Corp. of America, 864 P.2d 1018, 1025 (Wyo. 1993)). *See also generally* Textron, Inc. v. Liberty Mutual Ins. Co., 639 A.2d 1358, 1363 n.2 (*quoting* Roland W. Long, The Law of Liability Insurance, § 12A.05[3A] (West Group Supp. 1991)). " 'An underwriter who is secure that claims will not arise under the subject policy. . . after its termination or expiration [date] can underwrite a risk and compute premiums with greater certainty' [and] [t]he insurer [is able to] establish lower reserves and lower premiums because of [the] reduced risk resulting from not having to calculate for inflation or other future material risks' " *See* New England Reinsurance Corp. v. Nat'l Union Fire Ins. Co., 654 F.Supp.2d 742 (C.D.Cal 1986) (*quoting* Comment, *The "Claims Made" Dilemma in Professional Liability Insurance*, 22 U.C.L.A. Law Rev. 925 (1975) *and citing*

The United States District Court for the Southern District of Georgia, in *Simpson & Creasy, P.C. v. Continental Cas. Co.*,**48** acknowledged "coverage [under a claims made and reported policy] is contingent on 'the claim being made *and* reported to the insurer *during* the policy period.' "**49**  Furthermore, the District Court recognized an **important consideration when a court interprets a claims made and reported policy** as opposed to some other type of policy, noting:

> *If* a court were to excuse the insured from the reporting requirement or to allow an extension of reporting time after the end of the policy period and any extended reporting period, *__such is tantamount to an extension of coverage to the insured gratis__*, something for which the insurer has not bargained.  This extension of coverage, by the court, so very different from a mere condition of the policy, in effect *__rewrites the contract between the two parties__*.**50**

---

Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 495 A.2d 395, 3999 (1985)), *vacated on other grounds by*, 829 F.2d 840 (9th Cir. 1987)).

**48**    Simpson & Creasy, P.C. v. Continental Cas. Co., 770 F.Supp.2d 1351, 1354.

**49**    Simpson & Creasy, P.C. v. Continental Cas. Co., 770 F.Supp.2d 1351, 1354 (*quoting* Serrmi Prods., Inc. v. Ins. Co. of Pa., 201 Ga.App. 414, 415, 411 S.E.2d 305 (1991) (Emphasis in original))

**50**    Simpson & Creasy, P.C. v. Continental Cas. Co., 770 F.Supp.2d 1351, 1354 (*quoting* Serrmi Prods., Inc. v. Ins. Co. of Pa., 201 Ga.App. 414, 415, 411 S.E.2d 305) (Internal brackets omitted and emphasis added).  *See also* New England Reinsurance Corp. v. Nat'l Union Fire Ins. Co., 654 F.Supp.2d 742, 747 (*citing* Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 495 A.2d 395, 406) ("The crucial factor is certainty in the calculation of risk; a claims made and reported policy precisely defines the scope of the insured's risk to both the insurer and the insured.  __To permit an insured to receive an unbargained for coverage period beyond that clearly defined in the policy would both provide a windfall for the insured, and eliminate some of the benefits arising from the certainty in the scope of coverage__.") (Emphasis added). See also Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1365 (*citing* Esmailzadeh v. Johnson and Speakman, 869 F.2d 422, 424 (under a claims-made-and-reported policy excusing delay beyond policy period "would alter a basic term of the insurance contract"); City of Harrisburg v. Int'l Surplus Lines Ins. Co., 596 F.Supp. 954, 961 (M.D.Pa. 1984), *affirmed*, 770 F.2d 1067 (3d Cir. 1985) (giving an extension of reporting time after policy expiration rewrites the contract between the parties); Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So.2d 512, 515-516 (extending reporting time "in effect rewrites the contract between the two parties")).  *See*

In order for coverage to apply for GS2 Engineering under the Steadfast Policy, a claim must be made against GS2 Engineering and, in turn, reported by GS2 Engineering to Steadfast during the same policy period. [ECF 18-1, p.4 of 24; *Forte Aff.*, para. 26]. The evidence shows, and GS2 Engineering concedes, that Richland Two sued GS2 Engineering on 22 March 2010 [ECF 28, p.2 of 10, para. 2; ECF 28, p.3 of 10, para. 5], and GS2 Engineering's attorney accepted service of the pleadings on 14 April 2010. [ECF28, p.3 of 10, para. 5; ECF 28, p.4 of 10, para. 1; *Forte Aff.*, paras. 19-20; *4/4/2011 Forte Ltr.*, p.1, para. 3]. GS2 Engineering had a contractual obligation under the Steadfast Policy to properly notify Steadfast of the Richland Two claim once GS2 Engineering was aware of it. Admittedly, GS2 Engineering did not do so. [ECF28, p.3 of 10, para. 5; ECF 28, p.4 of 10, para. 1; *Forte Aff.*, paras. 19-20; *4/4/2011 Forte Ltr.*, p.1, para. 3]. The mere facts that (a) GS2 Engineering had "seamless coverage" from 2005 through 2011 and (b) the Steadfast Policy, upon termination of coverage, contained an automatic 30-day extended reporting period and, if purchased, a longer extended reporting period ***did not transform*** the Steadfast Policy into an "occurrence" policy granting GS2 Engineering the ability to report a claim beyond the Steadfast Policy's agreed-upon time limits.[51]

---

*also* Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co., ___ F.3d ___, ___ (7th Cir. 2013) (2013 WL 1296724, * 7, filed 2 April 2013).

[51]    Regardless of how GS2 Engineering "counts the days" of the 2009-2010 policy period or the 2010-2011 policy period (whether including the automatic 30-day ERP or not), GS2 Engineering knew about the Richland Two claim on 14 April 2010 (within the 2009-2010 policy period) and did not report the claim to Steadfast until well after 7 August 2010 (the day the 2010-2011 policy period began). Steadfast did not have any knowledge of the Richland Two claim until after receiving Richland Two's attorney's 6 October 2010 letter containing a copy of the Summons and Complaint. (10/6/2010 Smith Ltr., p.1). In fact, GS2 Engineering did not even tender the Richland Two claim to Steadfast until 12 November 2010. (11/12/2010 Sembos

GS2 Engineering was required to report the Richland Two claim to Steadfast before the 2009-2010 policy period ended.  GS2 Engineering knew about the claim on 14 April 2010, but did nothing until after the 2010-2011 policy period began.  GS2 Engineering had some 115 days after it knew about the Richland Two claim to notify Steadfast, but inexplicably GS2 Engineering did nothing[52] until 12 November 2010, when George A. Sembos, P.E., GS2 Engineering's President, finally tendered the pleadings in the State Court Underlying Litigation and, by necessity, the Richland Two claim to Steadfast.  [ECF 28, p.4 of 28, para. 1; *11/12/2010 Sembos E-Mail*, p.1].  Even then, while Mr. Sembos did not recall when he first received notice of the litigation, he candidly admitted he "fe[lt] pretty certain that it was after [Steadfast's] policy deadline." (*11/12/2010 Sembos E-Mail*, p.1).

GS2 Engineering simply "sat on its hands" and did nothing as GS2 Engineering was required to do under the Steadfast Policy.  The fact GS2 Engineering had "seamless coverage" does not obviate the policy language which required both the Richland Two claim to be made and reported in the very same policy period.  That was not the situation in this case.  Steadfast is entitled to summary judgment as a matter of law on all of the claims GS2 Engineering has asserted against Steadfast, as well as on Steadfast's insurance coverage counterclaim against GS2 Engineering.

---

E-Mail, pp.1-2).  GS2 Engineering simply failed to timely report the Richland Two claim to Steadfast as required by the clear condition precedent to coverage set forth in the Steadfast Policy.

**52**    Interestingly, Steadfast's first notice of the Richland Two claim came, not from its own insured – GS2 Engineering – but from Richland Two's attorney, Allen D. Smith, Esquire. (10/6/2010 Smith Ltr., p.1).  GS2 Engineering has admitted this.  [ECF 28, p.3 of 10, para. 5].

2.   **The Steadfast Policy's "Retroactive Date" Does Not Determine Steadfast's Duty To Either Defend Or Indemnify GS2 Engineering For The Richland Two Claim**

GS2 Engineering argues that this District Court's decision in _Med. Protective Co. of Ft. Wayne, Indiana v. S.C. Med. Mal. Liab. Ins. JUA_,**53** effectively provides that where an insurance policy contains a "retroactive date", the insurance company is, therefore, "paid to provide coverage for past events, as long as a claim [for which coverage is sought] was made during the time [the insured] had a policy in place." [ECF 28, p.9 of 10, para. 2]. GS2 Engineering appears to have misinterpreted this District Court's decision and placed too much reliance on the alleged "importance" of an insurance policy's "retroactive date".

The Steadfast Policy's "retroactive date" which was designated as 7 August 1998. [ECF 18-1, pp.21-22 of 24]. The Steadfast Policy defined the term "retroactive date" as "the date set forth in the Declarations or attached endorsement, and the earliest date a "professional service" or "covered operation" can commence for coverage to be provided under th[e] policy." Generally speaking, as noted by the United States Court of Appeals for the Fourth Circuit in _Ball v. NCRIC, Inc._,**54** the retroactive date in an insurance "policy issued to a[n] [insured is important since coverage is] provided [to the insured] for [actions and/or omissions] committed after the policy's retroactive date and [coverage is] excluded . . . for [actions/or omissions] occurring

---

**53**     Med. Protective Co. of Ft. Wayne, Indiana v. S.C. Med. Mal. Liab. Ins. JUA, 648 F.Supp.2d 753.

**54**     Ball v. NCRIC, Inc., 120 Fed.Appx. 965 (4th Cir. 2005) (2005 WL 176647, filed 27 January 2005).

before the retroactive date."[55]   One of the noted national insurance authorities, Insurance Risk Management Institute – IRMI – defies the term "retroactive date" as follows:

>A provision found in many (although not all) claims-made policies that eliminates coverage for claims produced by wrongful acts that took place prior to a specified date, even if the claim is first made during the policy period.
>
>For example, a January 1, 2010, retroactive date in a policy written with a January 1, 2010-2011, term, would bar coverage for claims resulting from wrongful acts that took place prior to January 1, 2010, even if claims (resulting from such acts) are made against the insured during the January 1, 2010-2011, policy period.
>
>There are two purposes of retroactive dates: (1) to eliminate coverage for situations or incidents known to insureds that have the potential to give rise to claims in the future and (2) to preclude coverage for "stale" claims that arise from events far in the past, even if such events are unknown to the insured.  In the former case, the retroactive date preserves the principle of 'fortuity' — that is, the insurer should not be called upon to cover the so-called burning building.   In the latter instance, the retroactive date makes policies more affordable by precluding coverage for events that, while insurable, are remote in time.[56]

IRMI further notes:

>[One of the] unique element[s] of claims-made policies is that many impose what are known as retroactive date requirements. These requirements stipulate that for coverage to apply, the wrongful act giving rise to a claim must have taken place on or after the policy's retroactive date—regardless of when the claim is ultimately made against the insured.  No [insurance] coverage applies if the wrongful act took place prior to a policy's retroactive date.  . . . .

---

[55]     Ball v. NCRIC, Inc., 120 Fed.Appx. 965, 972 (2005 WL 176647, *7) (*citing* Mut. Fire, Marine & Inland Ins. Co. v. Vollmer, 306 Md. 243, 508 A.2d 130 (1986)).

[56]     "Insurance Glossary:  "Retroactive Date", IRMI On-Line, last viewed on 2 May 2013 (www.irmi.com/online/insurance-glossary/terms/r/retroactive-date.aspx).

* * *

It is important to recognize that [most] professional liability policies are written with retroactive dates.  Of course, it is to the insured's advantage if a policy does not include one.  If an underwriter insists that a retroactive date be made part of a policy, it is also to the insured's advantage if the retroactive date is as early as possible in time, thereby affording coverage for the greatest possible number of events.  Thus, if a policy has a term of January 1, 2010 to January 1, 2011, a January 1, 2006 retroactive date is preferable to a January 1, 2010 retroactive date.  This is because under the latter retroactive date, there would be no coverage for events that took place prior to January 1, 2010.  In contrast, if the policy contained a January 1, 2006 retroactive date, coverage would only be precluded for events that took place prior to January 1, 2006. In effect, the January 1, 2006 retroactive date provides the insured with an additional 4-year "window" during which claims resulting from events or acts that took place from January 1, 2006 to January 1, 2010 would be covered by the policy.**57**

In _Nat'l Waste Associates, LLC v. Travelers Cas. & Sur. Co. of America_,**58** the Superior Court of Connecticut (Hartford Judicial Dist.), recognized that "the major drawback from the insurer's standpoint [when a retroactive date exists] is that [the insurer] may face exposure for wrongful acts performed [by the insured] in the past, not just during the policy period, and, therefore, it is not uncommon for the policy to limit the time period of coverage for prior acts by including a retroactive date."**59**  Furthermore, the Connecticut court stated that a " 'retroactive date' provision . . . restrict[s] coverage to claims based on incidents that occurred after a certain date.  Such a provision

---

**57**    "Retroactive Date Requirements in Claims-Made Policies", IRMI On-Line, last viewed on 2 May 2013 (www.irmi.com/online/pli/ch008/1l08c000/al08c020/bl08c02c.aspx).

**58**    National Waste Assoc., LLC v. Travelers Cas. & Sur. Co. of America, 51 Conn.Supp. 369, 988 A.2d 402 (2008).

**59**    National Waste Assoc., LLC v. Travelers Cas. & Sur. Co. of America, 51 Conn.Supp. 369, 382, 988 A.2d 402, 410 (_citing_ American Home Assur. Co. v. Abrams, 69 F. Sup.2d 339, 347 (D.Conn. 1999)).

eliminates the risk that an insurer, by issuing a claims-made policy, would assume liability arising from incidents that occurred before the policy's effective date, but remained undiscovered or caused no immediate harm."**60**   Finally, the appellate court noted to "permit an insured to recover for claims arising from the same fact[s], circumstance[s], situation[s], transaction[s], event[s] or [w]rongful [acts] alleged in a pending lawsuit or made the subject of a prior notice given to another insurer would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed."**61**

In this vein, the Steadfast Policy also provided, in pertinent part, in the section captioned **I.   INSURING AGREEMENT**, via the subsection entitled **COVERAGE A: PROFESSIONAL LIABILITY**, as follows:

> We will pay on behalf of an "insured" any "damages" an "insured" is legally obligated to pay as a result of a "claim" caused by:
>
> **1.**     An act, error or omission; or
>
> **2.**     Strict liability imposed by environmental law because of an act, error[,] or omission;
>
> During the rendering of or failure to render "professional services" ***provided that such act, error[,] or omission must commence on or after the "retroactive date" and before the***

---

**60**     National Waste Assoc., LLC v. Travelers Cas. & Sur. Co. of America, 51 Conn.Supp. 369, 382, 988 A.2d 402, 410-411 (*citing* Hartford Fire Ins. Co. v. California, 509 U.S. 764, 771 (1993)) (Alteration in original).   In fact, "[i]nsurers asked to issue claims-made policies protect themselves against liability for old occurrences by including a 'retroactive date' specifying the earliest occurrence to be covered, no matter when the claim is made." National Waste Assoc., LLC v. Travelers Cas. & Sur. Co. of America, 51 Conn.Supp. 369, 382, 988 A.2d 402, 410 (*citing* National Cycle, Inc. v. Savoy Reinsurance Co., 938 F.2d 61, 62 (7th Cir.1991).

**61**     National Waste Assoc., LLC v. Travelers Cas. & Sur. Co. of America, 51 Conn.Supp. 369, 382, 988 A.2d 402, 411 (*citing* United States v. A.C. Strip, 868 F.2d 181, 187 (Internal quotation marks omitted); Zunenshine v. Executive Risk Indem., Inc., 1998 WL 483475, *5 (S.D.N.Y., filed 17 August 1998)) (Alteration in original).

**end of the "policy period"** and the "claim" is first made against
the "insured" during the "policy period" and reported to us during
the "policy period," the automatic extended reporting period[,] or
the extended reporting period, if applicable.

[ECF 18-1, p.4 of 24; *Forte Aff.*, para. 27] (Emphasis added).

Contrary to GS2 Engineering's assertions, the "retroactive date" is not the "be all

and end all", it is simply the **_first date_** on or after which an insured's negligent act or

omission may occur and still be covered under the Steadfast Policy.  Nevertheless,

even though the retroactive date is set long before (7 August 1998)**62** either the 2009-

2010 policy period (7 August 2009, until 7 August 2010) or the 2010-2011 policy period

(7 August 2010, until 7 August 2011) once a claim was made against GS2 Engineering

in a particular policy period GS2 Engineering was obligated to advise Steadfast of the

claim in the very same policy period.  The Steadfast Policy was very clear that both the

claim and the reporting of the claim had to occur in the very same policy period.**63**

While the "retroactive date" certainly provides a significant advantage to GS2

Engineering since there was an initial "eight-year window" which expanded year-by-

year, the "retroactive date" did not determine Steadfast's obligation to either defend or

---

**62**    GS2 Engineering first purchased coverage from Steadfast beginning on 7 August
2005 (Forte Aff., para. 8) and maintained coverage continuously through 7 August 2011.  (Forte
Aff., para. 13).  The designated retroactive date of 7 August 1998, was eight years before the first
Steadfast policy became effective.  This gave GS2 Engineering an "eight-year window" during
which its employees could have committed an act or omission which gave rise to a claim which
subsequently became known at a point after 7 August 2005, when the Steadfast Policy was in
effect.  Given the nature of the work performed by GS2 Engineering, it could be several years
before a claim was discovered.  In fact, GS2 Engineering's "eight-year window" expanded as
GS2 Engineering renewed its coverage with Steadfast.

**63**    As with any "claims made and reported" policy, the Steadfast Policy did not have
any provision for cross-policy period claim occurrence and claim reporting.  If there had been
such a provision, it would have effectively defeated the very intent of a "claims made and
reported" policy to conclusively define the time period during which claims may arise.

indemnify GS2 Engineering vis-à-vis the Richland Two claim or, for that matter, any claim made against GS2 Engineering.  The Steadfast Policy's "retroactive date" only simply established one end of the potential coverage date parameter during which insurance coverage could possibly exist for a made-claim ***if and when*** the insured (*i.e.*; GS2 Engineering) performed all of its reporting/notification responsibilities under the Steadfast Policy.  No more, no less.

The mere existence of a "retroactive date" in the Steadfast Policy did not govern the ultimate application of insurance coverage or the determination of indemnity or defense provision under the Steadfast Policy.  GS2 Engineering's position is meritless and must be dismissed.  Steadfast is entitled to summary judgment as a matter of law on all of the claims GS2 Engineering has asserted against Steadfast, as well as on Steadfast's insurance coverage counterclaim against GS2 Engineering.

## IV.     CONCLUSION

Based upon the foregoing arguments and citation of authority, the Defendants and Counterclaim-Plaintiffs, Steadfast Insurance Company and Zurich American Insurance Company, respectfully request this District Court to deny the Plaintiff and Counterclaim-Defendant, GS2 Engineering & Environmental Consultant, Inc.'s, request for summary judgment on its breach of contract claim.  [ECF 28].  In turn, Zurich and Steadfast reiterate their prior request [ECF 31] to grant them summary judgment as a matter of law on all claims asserted against them by GS2 Engineering.

Respectfully submitted:

NEXSEN PRUET, LLC

By:  **s/Stephen P. Groves, Sr.**
          Bradish J. Waring, Esquire
          Fed. I.D. No. 4523
          Stephen P. Groves, Sr., Esquire
          Fed. I.D. No. 2490
          205 King Street, Suite 400
          Charleston, South Carolina  29401
          Telephone:  843.720.1725
          Telecopier:  843.414.8206
          E-Mail:     BWaring@nexsenpruet.com
                      SGroves@nexsenpruet.com

*Attorneys for the Defendants and*
*Counterclaim-Plaintiffs, Steadfast Ins. Co.*
*and Zurich American Ins. Co.*

Charleston, South Carolina

3 May 2013
NPCHAR1:1150897.1-MO-(SPG) 028752-00097